PAUL B. WATSON & others, trustees, *vs.* CITY OF BOSTON.

Suffolk.    March 10, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Tax*, Upon personal property held in trust for literary, benevolent, charitable and scientific institutions.    *Trust.    Words,* "Property."

Review by HAMMOND, J., of legislation of Colony, Province and Commonwealth with regard to whether a tax upon property held in trust should be assessed to the trustee or to the beneficiary.

Under R. L. c. 12, § 5, cl. 3, now St. 1909, c. 490, Part I. § 5, cl. 3, exempting from taxation " the personal property of literary, benevolent, charitable and scientific institutions," the word " property " includes the equitable interest of a corporation, organized " for the purpose of furnishing education in the mechanical arts," in a trust fund created by a will, the entire income of which is paid to the corporation quarterly by the trustees under the will, and such fund therefore is exempt from taxation, it being immaterial that, if the fund were taxable, the tax, under § 23 of the same statutes, would be assessed to the trustees and not to the corporation.

PETITION, filed in the Superior Court on July 5, 1910, under St. 1909, c. 490, Part I. § 77, on appeal from a decision of the board of assessors of Boston refusing to abate a tax upon certain personal property held by the plaintiffs in trust for the Wentworth Institute, a corporation organized under directions contained in the will of Arioch Wentworth, late of Swampscott, " for the purpose of furnishing education in the mechanical arts."

In the Superior Court the case was heard by *Fessenden*, J., upon an agreed statement of facts.

The material provisions of the will of Arioch Wentworth were as follows:

The trustees were directed " To hold [a certain fund] . . . as trustees and to pay the net income therefrom quarterly on the

first days of January, April, July and October of each year as follows: Seven hundred and fifty dollars ($750) each quarter to my daughter Susan M. Stuart; five hundred dollars ($500) each quarter to my grandson Arioch Wentworth Erickson; five hundred dollars ($500) each quarter to my grandson Willoughby Herbert Stuart, Jr.; and two hundred and fifty dollars ($250) each quarter to Cecile, wife of said Arioch Wentworth Erickson, during their respective lives, and the remainder of said net income each quarter to the Wentworth Institute hereinafter provided for. Said income shall not, before the payment thereof, to said beneficiaries, be assignable or attachable or trusteeable, or in any way or manner be liable for or liable to be taken for any debt, liability or contract of said beneficiaries or any of them, or be applied in any way or manner to the payment thereof. On the death of the last survivor of my said daughter, grandsons and grandson's wife, the trustees shall pay over to the said Wentworth Institute the whole of said trust fund. . . .

"The trustees, Watson, Wentworth and Atherton, above-named, shall forthwith qualify as such and organize a corporation to be known as the Wentworth Institute, for the purpose of furnishing education in the mechanical arts, the original incorporators to be nominated by the said trustees, Watson, Wentworth and Atherton with the approval of the attorney general of the Commonwealth."

The corporation has its offices and its only place of business in Boston. As soon as practicable after its incorporation the corporation acquired land on Huntington Avenue, Boston, and has been and now is erecting buildings thereon to be used exclusively for the purposes of the corporation from the funds provided by the will, and the entire net income is paid over to the corporation quarterly by the trustees.

Other facts are stated in the opinion.

The trial judge dismissed the complaint and reported the case for determination by this court.

*C. F. Choate, Jr.*, for the plaintiffs.

*J. D. McLaughlin*, for the defendant.

HAMMOND, J. The petitioners do not contest their liability to be taxed for that part of the trust fund whose income is payable

to certain persons, but they contend that the part whose income is payable to the Wentworth Institute is exempt from taxation. Inasmuch as this case concerns only this latter part, for the sake of brevity this part will be hereinafter designated as the trust fund.

R. L. c. 12, § 5, cl. 3,* so far as material to the question before us, provides that " the personal property of literary, benevolent, charitable and scientific institutions " shall be exempt from taxation. And the question is whether personal property held in trust to pay over the income to such an institution is within the statute.

R. L. c. 12, § 23, cl, 5,* provides that with certain exceptions personal property held by a trustee the income of which is payable to another person shall be assessed to the trustee. In any event therefore this fund cannot be assessed to the *cestui que trust* the Wentworth Institute. The contention of the respondent that the fund is not exempt is based largely upon this provision. It is stated in its brief as follows: " The statute exempting from taxation the personal property of certain institutions should be construed as exempting it only so far as such property would be otherwise taxable to such institutions. If, under the statutes declaring to whom property shall be assessed, the institution could not legally be assessed for its equitable interest in personal property, then the statute of exemptions cannot be invoked, because the object of this statute is merely to forbid an assessment where one could otherwise be legally made." And in support of this position it argues that the section exempting the property of the institutions named " does not operate on the property itself, but, read in connection with those sections of the same chapter which provide where and to whom property shall be assessed . . . [it] in effect declares that such institutions shall not be assessed for such property "; and further that under our scheme of taxation an assessment, so far, at least, as respects personal estate, is not a proceeding *in rem* but " purely one *in personam* " and " liability to pay . . . [taxes upon personal estate] attaches to the person and not to the property on account of which the tax is assessed."

---

* R. L. c. 12, §§ 5, 23, are now St. 1909, c. 490, Part I. §§ 5, 23.

In considering the question it is well to look into the history of the legislation respecting taxation.

Under the Colonial statutes 1651-57 (Anc. Chart. 69), personal property held in trust appears to have been taxed to the trustee and not to those beneficially interested in the trust. It was described in these statutes as being " under their [the] custody or managing " of the person assessed. And the same provision is contained in the Provincial statutes. See Prov. Sts. 1692-93, c. 4, § 1; 1694-95, c. 2, § 4; 1 Prov. Laws, 29, 167, *et passim.* Early in the tax acts there was a provision that the assessors should make a fair list of the assessment, " setting forth in distinct columns, against each particular person's name, how much he or she is assessed at for polls, and how much for houses and lands, and how much for personal estate and income by trade or faculty." (This last phrase did not mean income from property, but from employment.) Prov. Sts. 1715-16, c. 11, § 2; 1740-41, c. 8, § 2; 2 Prov. Laws, 21, 1033, *et passim;* 1742-43, c. 31, § 2; 1745-46, c. 1, § 2; 3 Prov. Laws, 61, 233, *et passim.* And as early as 1747 this provision was amended by adding thereto the following: " and if as guardian, or for any estate in his or her improvement, in trust, to be distinctly expressed." Prov. Sts. 1746-47, c. 1, § 3; 1747-48, c. 1, § 3; 3 Prov. Laws, 288, 354. This provision is continued through the succeeding provincial statutes (Prov. Sts. 1757-58, c. 2, § 3; 1759-60, c. 2, § 3; 1767-68, c. 8, § 3; 4 Prov. Laws, 15, 261, 971, *et passim;* 1769-70, c. 1, § 3; 1773-74, c. 14, § 3; 1780, c. 16, § 3; 5 Prov. Laws, 19, 319, 1430, *et passim*) and the earlier State statutes (Sts. 1780, c. 43; 1781, cc. 16, 28; 1782, c. 65; 1784, c. 25; 1785, c. 74), up to St. 1795, c. 11, where the phrase "in his or her improvement" was changed to "in his or her possession"; and as thus verbally changed this part of the provision continued until St. 1804, c. 144, when it was changed so as to read " distinguishing any sum assessed on such person as guardian, or for any estate in his or her possession in trust," and so continued (see among others the tax acts of 1810, 1820) until the statute passed March 4, 1829, commonly cited as St. 1828, c. 143.

This statute made a change as to the assessment of trust property. It provided that " persons entitled to the income of any

personal property held by others in trust for them, shall be liable to be taxed for the capital or principal sum in the town where such persons reside." And, with a modification as to married women not here material, such continued to be the law until changed in 1860 by the General Statutes. Rev. Sts. c. 7, § 10, cl. 5, and Report of the Commissioners on this clause.

The commissioners on the General Statutes recommended a change which in substance was adopted and became Gen. Sts. c. 11, § 12, cl. 5, which reads as follows: "Personal property held in trust by an executor, administrator, or trustee, the income of which is payable to another person, shall be assessed to the executor, administrator, or trustee, in the place where such other person resides, if within the State, and if he resides out of the State it shall be assessed in the place where the executor, administrator, or trustee, resides, and if there are two or more executors, administrators, or trustees, residing in different places, the property shall be assessed to them in equal portions in such places, and the tax thereon shall be paid out of said income. If the executor, administrator, or trustee, is not an inhabitant of this State, it shall be assessed to the person to whom the income is payable, in the place where he resides." And such has been the law up to the present time. Pub. Sts. c. 11, § 20, cl. 5. R. L. c. 12, § 23, cl. 5. St. 1909, c. 490, Part I. § 23, cl. 5.

From this review of the tax legislation it appears that from 1651 to 1828 property held in trust was assessed to the trustee; from 1828 to 1860 to the *cestuis que trust;* and from 1860 to the present time, in certain cases to the trustee and in certain other cases to the *cestuis que trust.*

From an early period in our history there have been exemptions from general taxation. There are at least two classes, the first based upon the use to which the property is appropriated, as for instance the personal property of educational institutions, household furniture and workmen's tools; the second based upon the inability of the owner to pay a tax, as for example the estates of infirm and poor people. The property is exempt in the first class irrespective of the question whether the owner is able to pay a tax, and in the second irrespective of the nature of the use. The present general provision as to the exemption of the personal property of institutions like the Wentworth Institute

was inserted in the Revised Statutes, and, with some modifications not material to the question before us, has continued to the present time. Rev. Sts. c. 7, § 5, cl. 2. Gen. Sts. c. 11, § 5, cl. 3. Sts. 1874, c. 375, § 8; 1878, c. 214. Pub. Sts. c. 11, § 5, cl. 3. Sts. 1882, c. 217, § 2; 1886, c. 231; 1888, c. 158; 1889, c. 465. R. L. c. 12, § 5, cl. 3. St. 1909, c. 490, Part I. § 5, cl. 3.

The legal title to this trust fund, it is true, is in the trustees, but the whole beneficial interest is in the institution. The term "property" in its ordinary legal signification "is *nomen generalissimum*, and extends to every species of valuable right and interest." *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1, 35. See also *Williston Seminary* v. *County Commissioners*, 147 Mass. 427. It certainly is broad enough to cover an equitable interest like that possessed by the Wentworth Institute in this trust fund.

Nor can it be material that the property is by law assessable to the trustee and not to the person entitled to the beneficial interest. The exemption is based upon the use which is presumed to be made of the fund, namely, for an educational purpose, and not upon the persons in whom stands the legal title. The law as to the assessment of personal property held in trust whose income is payable to another has been changed from time to time. As already stated, from 1828 to 1860 the fund was assessed to the *cestui que trust*, if living in the State, otherwise to the trustee in the town where he resided. R. L. c. 12, § 23, cl. 5, makes various provisions about the assessment of property held in trust, depending upon the respective residences of the trustee and beneficiaries. It is assessed to the trustee if residing in this Commonwealth, otherwise to the beneficial owner residing in this Commonwealth. And there are various provisions as to the particular town in which it shall be assessed. In this very case, if the trustees should remove from the Commonwealth the fund would be taxable to the Wentworth Institute; and hence, even upon the reasoning of the respondent, would be exempt. And if one of the trustees should afterwards become a resident of this Commonwealth, then it would be taxable to him and upon the same reasoning would not be exempt. And so, if the respondent's position is correct, property whose exemption is based upon the use to which it is appropriated would be exempt or not

exempt according as the trustee lived without or within the Commonwealth.

This interpretation loses sight of the ground of the exemption and makes the exemption hinge upon a merely accidental circumstance not pertaining to the ground upon which it is based. It must be held to be unreasonable.

For the reasons above stated we are of opinion that the equitable interest of the Wentworth Institute in the trust fund is "property" within the meaning of the exempting clause of the statute, and that the section prescribing the manner of assessing trust funds in no way affects the right of exemption under that clause. Under this interpretation the question of exemption is made to depend not upon the irrelevant fact of the residence of the trustee within or without the Commonwealth as the case may be, but upon the true test, namely, the use to which the property is to be appropriated.

In accordance with the terms of the report the order is

*Judgment for the petitioners.*